(original)

UNITED STATES DISTRICT COURT
FOR THE
EASTERN DISTRICT OF NEW YORK

------------------------------------X

ANDREAS ARNDT;                          :
MAGUS VERWALTUNGS GmbH; and             :
TRUSTEES of I.G. FARBEN                 :       CIVIL ACTION #
AKTIONÄRSVEREINIGUNG e.V.               :

                                        :       CV · 04 · 751
            Plaintiffs,                 :                    FILED
    vs −                                :              IN CLERK'S OFFICE
                                        :       U.S DISTRICT COURT E.D N.Y
                                        :              FEB 2 4 2004
UBS AG;                                 :       GLASSER J.   ★
a/k/a UNION BANK OF SWITZERLAND;        :       GOLD, M.J.   BROOKLYN OFFICE ★
a/k/a UBS (USA) INC.;                   :
a/k/a UBS PAINE WEBBER;                 :
    successors in interests to          :
    assets of I.G. FARBEN AG            :
    of Germany in Switzerland,          :
    the assets of I.G. CHEMIE AG        :
    a shell, cloaked or alter-ego       :
    company and/or a subsidiary,        :        COMPLAINT
    daughter, managed, controlled       :       (With Jury Demand)
    by I.G. FARBEN AG; successors       :
    in interest to assets of            :
    INTERNATIONALE INDUSTRIE−und         :
    HANDELSBETEILIGUNGEN AG             :
    a/k/a INTERHANDEL, Basel            :
    a/k/a INTERNATIONAL HOLDINGS        :
    in INDUSTRY and COMMERCE,           :

                                        :
            Defendants                  :
------------------------------------X

        Plaintiffs, ANDREAS ARNDT, MAGUS VERWALTUNGS GmbH and

TRUSTEES of I.G. FARBEN AKTIONÄRSVEREINIGUNG e.V. (hereinafter

collectively referred to as "Plaintiffs") by its/their attorney,

EDWARD D. FAGAN ESQ., as and for their complaint allege the

following based upon information and belief against defendants

UBS AG, a/k/a UNION BANK OF SWITZERLAND A.G. ; a/k/a UBS (USA)

INC., a/k/a UBS PAINE WEBBER INC.; as successor in interests to

the assets of I.G. FARBEN AG of Germany in Switzerland, the
assets of I.G. CHEMIE AG a shell, cloaked or alter-ego company
and/or a subsidiary, daughter, managed, controlled by I.G.
FARBEN AG and as successor in interest to the assets of
INTERNATIONALE INDUSTRIE-und HANDELSBETEILIGUNGEN AG a/k/a
INTERHANDEL, Basel a/k/a INTERNATIONAL HOLDINGS in INDUSTRY and
COMMERCE (hereinafter collectively referred to as "Defendants",
"UBS" and/or "Defendants UBS"):

## GENERAL INTRODUCTION & FACTS

1. In 1929, I.G. CHEMIE a Swiss company was founded by the
   German company I.G. FARBEN.

2. When it was founded, and at all times subsequent thereto,
   I.G. CHEMIE was controlled, managed and/or dominated by
   I.G. FARBEN.

3. In the 1930s, I. G. CHEMIE in accordance with the
   management, directives and influence of I.G. FARBEN
   acquired majority holdings in companies throughout the
   world including several U.S. companies which in 1939 merged
   into General Aniline & Film Corporation ("GAF").

4. GAF was one of the most important assets of I.G. CHEMIE and
   I.G. FARBEN.

5. With the advent of World War II, the United States sought
to seize the assets of German companies operating in the
United States.

6. The US in fact seized the assets of I.G. CHEMIE and I.G.
FARBEN in the US – to wit: GAF – because GAF was considered
to be enemy property.

7. US intelligence reports and other evidence showed and/or
concluded that I.G. CHEMIE was controlled, managed and/or
dominated by I.G. FARBEN and therefore the I.G. CHEMIE
assets in the US were considered to be the assets of an
enemy country, i.e. Germany, as opposed to a neutral
country, i.e. Switzerland.

8. In 1945, after World War II, I.G. CHEMIE changed its name
to INTERNATIONALE INDUSTRIE-und HANDELSBETEILIGUNGEN AG or
"INTERHANDEL".

9. And, after changing its name, I.G. CHEMIE – now INTERHANDEL
commenced litigation in the United States to try to recover
the I. G. CHEMIE assets in the US – to wit: GAF – claiming
that it was NOT the assets of an enemy combatant and as
such should be returned to I.G. CHEMIE or INTERHANDEL.

10.     This litigation went on in different stages from 1947
through 1966.  At various times, the Swiss Confederation
made legal and diplomatic claims that the GAF assets of
I.G. CHEMIE/INTERHANDEL be returned.

----------------

11.     During the course of this protracted litigation, many

documents were NEVER produced by I.G. CHEMIE/INTERHANDEL –

predecessors in interest to defendant UBS because it/they

claimed that to produce such documents would violate Swiss

banking secrecy laws.    It is interesting to note that this

very excuse was used by this same defendant during the more

than 50 year dispute with Holocaust victims and/or their

heirs or beneficiaries who claimed that this same defendant

refused to return and/or wrongfully converted to its own

property billions of dollars in assets belonging to persons

who sought to safeguard monies from the Nazis by depositing

same in Swiss Banks for their families future AFTER World

War II.    It was only after political intervention and legal

claims that the Swiss agreed to change Swiss Bank secrecy

to address this singular issue.   However, the Swiss banks

and the Swiss authorities have continued to hide behind

Swiss Bank secrecy laws to allow them to "claim" they did

not have to and could NOT produce documents related to I.G.

CHEMIE, I.G. FARBEN and INTERHANDEL.

12.     The I.G. CHEMIE/INTERHANDEL claim for the return of

GAF assets ended with defendant UBS' predecessors in

interest receiving – albeit allegedly wrongfully –

approximately 40 – 45 % of the auction value of GAF as of

1966 and the remainder of the monies were kept and/or

---------------

seized by the United States Government, presumably under the applicable provisions of the Trading with the Enemy Act and/or other US Governmental Executive Orders.

13.     This claim is focused exclusively on the restitution of that portion of the assets that were wrongfully taken by defendant's predecessors in interest.

14.     The claim is for the restitution of assets that can be traced directly to I. G. Farben AG – the notorious German company that as a result of the Nuremburg trials was to be liquidated because of, among other things:

   a. Crimes against humanity during World War II, including the manufacturing of the Zyklon B gas used to exterminate millions of innocent victims of Nazi persecution;

   b. Complicity with and profiteering from the slave and forced laborers made available to it by the Nazi Regime at its concentration camps throughout Germany and Poland; and

   c. Its direct involvement with the extermination camps and/or slave/forced labor programs used by the Nazi Regime during World War II and through which over 6 million Jews and millions of other innocent victims of Nazi persecution were kidnapped, confined, tortured, enslaved, worked to death and/or murdered.

-----------------

*Andreas Arndt; Magus GmbH and Trustees of I.G. Farben Aktionärsvereinigung e.V. v. UBS et al (EDNY) – Page 5*

15.     Based on newly discovered and/or declassified
documents, it can now be shown that Defendants UBS is/are
successors in interest to the assets of I.G. FARBEN AG -
which based upon the historic mergers and/or assimilation
of assets today approximately 40 - 45 % of the value of
UBS.

> *Note:    While some documents have recently been
> discovered and/or as to which access has only
> recently been granted in Switzerland, the Former
> Soviet Union Russian, the United States and
> Germany, plaintiffs believe and are informed that
> additional significant and important documents
> remain classified and/or withheld by Swiss, US,
> German, Former Soviet Union and/or other
> Government authorities and/or have been withheld
> by Defendants UBS themselves.   As such the
> complaint will be amended to include new facts
> if, as and when such new additional documents are
> eventually produced, if at all.*

16.     Based on newly discovered documents, it can now be
shown that Defendants UBS has wrongfully withheld assets
that can be traced directly and which belong/belonged to
I.G. FARBEN AG and which assets can and should have been
made available to and/or used in accordance with the

----------------

directives of the Nuremburg tribunals and subsequent directives of competent German Courts and restitution programs, including but not limited to payment of reparations and damages to the millions of innocent persons who were directly affected and/or damaged by I.G. FARBEN and to whom restitution, reparations and damages are still owed.

17.    Based on newly discovered documents, it can further be shown that for more than 50 years Defendants UBS, or its predecessors in interest I.G. CHEMIE AG and/or **INTERNATIONALE INDUSTRIE-und HANDELSBETEILIGUNGEN AG a/k/a INTERHANDEL, Basel a/k/a INTERNATIONAL HOLDINGS in INDUSTRY and COMMERCE (hereinafter "INTERHANDEL")**, negligently, carelessly, recklessly and/or intentionally concealed, withheld, failed to produce, misrepresented and/or engaged in the spoliation of evidence and/or documents that were have shown that in fact I.G. CHEMIE AG/INTERHANDEL was:

   a. a shell, cloaked or alter-ego company of I.G. FARBEN AG; or

   b. a subsidiary and/or daughter of I.G. FARBEN AG; or
   c. a company that was managed and/or controlled by I.G. FARBEN AG.

18.    Based on newly discovered documents, it can further be shown that for more than 50 years Defendants UBS, or its

predecessors in interest I.G. CHEMIE AG and/or INTERHANDEL, negligently, carelessly, recklessly and/or intentionally concealed, withheld, failed to produce, misrepresented and/or engaged in the spoliation of evidence and/or documents for the purpose of wrongfully interfering and/or preventing return to I.G. FARBEN of the assets of I.G. CHEMIE AG and/or INTERHANDEL.

19.    Based on newly discovered documents, it can be further shown that the purported independent investigations by The Bergier Historical Commission which was commissioned to investigate the Swiss governmental archives and private archives including Defendants UBS, among other things:

   a. failed to access necessary and available archives in the United States, the Former Soviet Union, Germany and elsewhere around the world related to the true character of the assets Defendants UBS acquired from I.G. CHEMIE, I.G. CHEMIE AG and/or INTERHANDEL; and

   b. inaccurately reported upon the true character and ownership of the assets of I.G. CHEMIE AG and/or INTERHANDEL.

20.    Based on newly discovered documents, it can be further shown that the assets of I.G. CHEMIE AG and/or INTERHANDEL belong to I.G. FARBEN AG of Germany and must be returned so that they can be used to pay its debts, including

---

reparations, restitution and damages to victims of the
damages that I.G. FARBEN caused and/or inflicted upon
millions of innocent persons during World War II.

21.     Based on newly discovered documents, it can be further
shown that the present UBS developed from the following
chain of events:

   a. In 1928/29, I.G. FARBEN founded I.G. CHEMIE AG;

   b. At the beginning of World War II in 1940/41, I.G.
      FARBEN sought to protect its assets in Switzerland and
      in the United States and to insure that these assets
      were not seized by the Allies and as such instituted
      purely artificial policies so that I.G. CHEMIE
      appeared to be a separate and/or autonomous company,
      when in fact it was owned, controlled, operated and/or
      managed by and/or was the alter ego of I.G. FARBEN;

   c. In 1940/1941 I.G. FARBEN shifted assets to I.G.
      CHEMIE, including but not limited to significant
      assets located in Switzerland and the United States
      including but not limited to interests in companies
      such as BASF, GAF and BAYER (in reality subsidiaries
      and/or "daughter" companies of I.G. FARBEN) whose
      interests were held by I.G. CHEMIE for I.G. FARBEN;

   d. From 1940/1941, I.G. FARBEN controlled the operations
      of I.G. CHEMIE;

------------------

e. In April 1942, pursuant to the Trading with the Enemy Act of October 1917 (as amended), the United States Government seized assets of I.G. CHEMIE in the United States – specifically the company known as General Aniline & Film Corporation ("GAF") on the ground that these shares in reality belonged to I.G. FARBEN and that I.G. CHEMIE and GAF was/were in one way or another controlled by an enemy company, i.e. I.G. FARBEN;

f. After World War II, I.G. CHEMIE changed its name to INTERHANDEL and then sued the United States Government to seek the return of GAF;

g. Litigation went on from 1947 until finally a deal was made in 1966, through which an auction was held to sell GAF and through which a large portion of the proceeds – $122 million dollars (USD) or 40 – 45 % of the sale price was given to I.G. CHEMIE/INTERHANDEL;

h. The $ 122 million dollars (USD) in 1966 that were given to I.G. CHEMIE/INTERHANDEL should NOT have been given back to I.G. CHEMIE/INTERHANDEL – as they in fact belonged to I.G. FARBEN;

i. When the $122 million dollars (USD) was given to I.G. CHEMIE/INTERHANDEL in 1966, these assets were almost immediately shifted to UBS;

j. During the post World War II litigation over the true ownership of assets of I.G. CHEMIE in the United States, I.G. CHEMIE, Defendants UBS' predecessors in interest, and others, misrepresented facts and evidence and/or concealed facts and evidence so as to improperly and/or wrongfully acquire the $122 million dollars (USD);

k. As a direct result of the aforesaid misrepresentations and/or concealment of facts and evidence, Defendants UBS' predecessors in interest wrongfully took and withheld assets actually belonging to I.G. FARBEN;

l. In 1966/1967, immediately after Defendants UBS' predecessor in interest INTERHANDEL acquired and/or secured the aforesaid $122 million dollars (USD), INTERHANDEL was merged into what is today known as Defendant UBS;

m. The merger of INTERHANDEL into Defendant UBS created the largest, most powerful and most profitable bank in Switzerland and indeed in the world;

n. The financial structure and strength of Defendant UBS today is based on and can be linked directly to the assets that in reality belong to, were never but which should be returned to I.G. FARBEN of Germany;

    o. The percent of shares of present day Defendant UBS
       that can be traced back to I.G. CHEMIE (and in turn
       I.G. FARBEN) is approximately 40 - 45 % - which
       corresponds to the percent of the assets that
       Defendant UBS' predecessors in interest I.G.
       CHEMIE/INTERHANDEL received from the sale of the I.G.
       CHEMIE assets located in the United States in 1966;

    p. The plaintiffs claim for restitution and/or damages
       against defendants UBS is between:

       i. 1.8 BILLION DOLLARS (USD) - which equals the
          present day value of the $122 million dollars
          (USD) that Defendants UBS' predecessors in
          interest received from the sale of assets in
          1966; and

       ii. $35 BILLION DOLLARS (USD) - which equals 40 - 45
          % of the present market value of the outstanding
          shares of Defendant UBS' stock and which 40 - 45
          % figure was the figure used to determine the
          $122 million dollars give to defendants UBS'
          predecessors in interest in 1966.

22.    Based on newly discovered documents, it can now be
    shown that the present day UBS is nothing more than the
    successor in interest to, and/or built upon the assets of,
    the most notorious slave/forced labor company in modern day

------------------

history - I.G. FARBEN - for which it - Defendant UBS - has
yet to account for and/or pay damages and/or restitution to
victims of the crimes against humanity, slave/forced
laborer and/or other victims of World War II atrocities
committed by, with the assistance of and/or made possible
by its predecessors in interest - I.G. FARBEN.

### THE PARTIES

23.      Plaintiff ANDREAS ARNDT and MAGUS VERWALTUNGS GmbH are
individual and/or corporate shareholders of I.G. FARBEN to
whom Defendants owe the monies and/or damages claimed
herein.

24.      Plaintiff ANDREAS ARNDT and MAGUS VERWALTUNGS GmbH are
citizens and/or residents of the Federal Republic of
Germany.

25.      Plaintiffs ANDREAS ARNDT and MAGUS VERWALTUNGS GmbH
have legal, contractual and cognizable rights and interests
to make these claims on behalf of itself/themselves and/or
for plaintiffs TRUSTEES of I.G. FARBEN AKTIONÄRSVEREINIGUNG
e.V. and/or I.G. FARBEN itself and/or others shareholders.

26.      Plaintiff TRUSTEES of I.G. FARBEN AKTIONÄRSVEREINIGUNG
e.V. has legal, contractual and cognizable rights and
interests to make these claims on behalf of itself and/or
for the benefit of I.G. FARBEN itself and/or other I.G.
FARBEN shareholders.

*Note: I.G. FARBEN is in liquidation and a trustee has been appointed to deal with the issue of how to dispose of whatever assets, after payment of debts, as may be recovered through claims herein. Debts of I.G. FARBEN specifically include monies for reparations/restitution for and/or damages to victims of I.G. FARBEN related slave/forced labor, concentration and/or extermination camp operations and atrocities, and whatever other obligations as I.G. FARBEN AG (or in liquidation) may have in accordance with existing contracts and directives from The Nuremburg Tribunals and/or laws or Court Orders of the Federal Republic of Germany. It is reasonably anticipated that the restitution, reparations and/or damages monies for victims shall comprise the majority of the assets of whatever is recovered from defendants herein.*

27.    At all times relevant hereto, Defendants UBS is/are banking and/or financial institutions with worldwide headquarters in Zurich Switzerland and New York, NY.

28.    At all times relevant hereto, Defendants UBS maintain offices and conduct business in the United States, in New York City and within this judicial district.

29.　At all times relevant hereto, Defendants UBS conduct its/their business in the United States in and through Defendant UBS (USA) INC., UBS PAINE WEBBER, and other companies which are organized, incorporated and/or operate under the laws of the State of New York.

30.　At all times relevant hereto, Defendants UBS is/are successors in interests to I.G. CHEMIE AG a company formerly operating in Switzerland and which owned and operated assets in the United States.

31.　At all times relevant hereto, Defendants UBS is/are successors in interest to INTERHANDEL through a series of name changes from I. G. CHEMIE AG to INTERHANDEL, which continued to operate in Switzerland, and its/their ownership, control and operation of assets in the US.

32.　At all times relevant hereto, Defendants UBS is/are successors in interest to the 1966 assets of General Aniline & Film Corporation ("GAF") a company which owned, operated and did business in the US, within this judicial district, and other assets located in the US and worldwide.

33.　At all times relevant hereto, Defendants UBS is/are successors in interest to certain assets of I.G. FARBEN AG of Germany, which were located in Switzerland, in the US and elsewhere around the world.

## JURISDICTION & VENUE

34.     At all times relevant hereto, the Court has jurisdiction over this matter pursuant to 28 U.S.C. 1350 – The Alien Tort Claims Act and 28 U.S.C. 1351 – The Torture Victims Protection Act, insofar as restitution, reparations and damages recovered are to be used in great part to pay reparations and restitution for and/or damages to victims of I.G. FARBEN related slave/forced labor, concentration and/or extermination camp operations and atrocities, and whatever other obligations as I.G. FARBEN AG (or in liquidation) may have in accordance with existing contracts and directives from The Nuremburg Tribunals and/or laws or Court Orders of the Federal Republic of Germany.

35.     At all times relevant hereto, the Court has personal jurisdiction over the parties in that the Defendant, and/or its/their subsidiaries, affiliates and/or alter egos, conduct systematic and continuous business within the State of New York and within this judicial district.

36.     At all times relevant hereto, Defendant conducts continuous and systematic business in the City and State of New York and within this judicial district.

37.     At all times relevant hereto, Defendants UBS and UBS PAINE WEBBER conducted business as one entity.

---------------

38.     At all times relevant hereto, the Court has general and/or specific jurisdiction over Defendants by virtue of its conduct of business, and the fact that the assets in question, matters in controversy and actions were conducted in the State of New York and within this judicial district.

39.     At all times relevant hereto, venue is proper in this Court since Defendant, and/or its/their subsidiaries, affiliates and/or alter egos, do business and may be found in the District within the meaning of 28 U.S.C. 1391(a).

40.     At all times relevant hereto, the Court may transfer this case, pursuant to 28 USC ¶ 1531, to another federal court in one of the other judicial districts in which defendants have continuous and systematic business, should jurisdiction be found lacking in this judicial district.

41.     At all times relevant hereto, venue may also be obtained in this Court by virtue of the fact that had this case been brought in any of such other judicial districts, venue of and for the complaint could be transferred to this Court pursuant to 28 USC ¶ 1401.

### RELATED CASES

42.     At all times relevant hereto, this case is related to the below listed matters all of which cases were filed within this judicial district predicated upon claims against companies – or successor companies – that allegedly

engaged in and/or profited from Slave/Force Labor
Activities, Crimes Against Humanity and/or other Atrocities
committed against innocent persons during World War II,

    a. *Pollack et al v. Siemens AG et al*, 98 CIV 5499 (EDNY);

    b. *Bressler et al v. Holzmann AG et al*, 98 CIV 6335
      (EDNY); and

    c. *Gutwillig et al v. Steyr-Daimler-Puch AG et al*, 98 CIV
      6336 (EDNY).

43.     At all times relevant hereto, the above cases were
assigned to the Honorable I. Leo Glasser USDJ.

44.     At all times relevant hereto, the above cases together
with other similar cases against companies − or successor
companies - that allegedly engaged in and/or profited from
Slave/Force Labor Activities, Crimes Against Humanity
and/or other Atrocities committed against innocent persons
during World War II were consolidated for settlement
purposes by the Judicial Panel on Multi District Litigation
and were assigned to the Honorable I. Leo Glasser USDJ.

45.     At all times relevant hereto, the above cases were
dismissed as part of a Global Agreement entered into in
1999 through which Slave/Forced Laborers, and others,
received reparations by and through a 10 Billion Deutsche
Mark German Foundation that was capitalized in part from
contributions of companies sued in the above named actions.

46.     At all times relevant hereto, defendant UBS, and/or
its predecessors in interest, including I.G. CHEMIE and
INTERHANDEL, and I.G. FARBEN AG did NOT participate in the
aforementioned Global Agreement, did NOT contribute to the
10 Billion Deutsch Mark Foundation and received no release
of the claims herein.

### UNRELATED CASE INVOLVING UBS & HOLOCAUST RELATED CLAIMS

47.     At all times relevant hereto, another Holocaust
related case entitled *In Re: Holocaust Victims Assets
Litigation*, 96 CIV 4849 (EDNY) – commonly known as "The
Swiss Banks Case" – was another case filed against
defendant UBS.   That case was settled in 1998 with
defendant UBS contributing to a $1.3 billion dollar (USD)
settlement and the administration of the settlement is
ongoing before the Honorable Chief Judge Edward R. Korman.
The claims made in The Swiss Banks did NOT include the
claims made herein and no release was given to defendant
UBS for the claims made herein.

### FIRST CAUSE OF ACTION – ACCOUNTING

48.     At all times relevant hereto, plaintiffs repeat and
reallege each and every one of the allegations set forth
herein above as if the same were set forth fully and at
length herein.

49. At all times relevant hereto, defendants knew or should have known of the existence of corporate records that would have confirmed that I.G. FARBEN controlled the assets of I. G. CHEMIE.

50. At all times relevant hereto, demands have been made periodically by plaintiffs and others for the production of defendants' corporate records relating to defendants profiteering from, involvement, business dealings related to and/or knowledge that I. G. FARBEN controlled the assets of I.G. CHEMIE or retention of assets belonging to either company.

51. At all times relevant hereto, plaintiffs and others have demanded that (i) Defendants UBS reveal their complete corporate records regarding the defendants profiteering from, involvement, business dealings with and/or knowledge related to I.G. CHEMIE and I.G. FARBEN assets, (ii) Defendants retention of assets belonging to I.G. CHEMIE and/or I.G. FARBEN and (iii) that Defendants UBS provide a just and fair accounting of the specific assets that it acquired which in fact belonged to and/or were controlled by I.G. FARBEN.

52. At all times relevant hereto, Defendants UBS have failed and/or refused to provide said records and has

------------------

failed to comply with demands for production of same by
plaintiffs and others.

53.      At all times relevant hereto, Defendants UBS refused
to comply with the requests of plaintiffs that it/they
provide the aforesaid accounting, including but not limited
to:

    a. Slave/forced labor monies from I.G. FARBEN;

    b. Slave/forced labor monies from I.G. CHEMIE;

    c. Other monies from I.G. FARBEN operations;

    d. Other monies from I.G. CHEMIE operations;

    e. interest and/or dividends earned;

    f. stocks, bonds, securities or other instruments or
       financial or insurance services products purchased;

    g. fees charged by defendants;

    h. transfers to or from I. G. FARGEN to I.G. CHEMIE or
       other companies;

    i. transfers from I.G. CHEMIE to other companies.

    j. loans made by I. G. FARGEN to or for the benefit of
       I.G. CHEMIE or other companies;

    k. loans from I.G. CHEMIE to other companies;

    l. assets retained by defendants UBS belonging to I.G.
       FARBEN and/or I.G. CHEMIE.

54.      At all times relevant hereto, as a result of defendant
UBS' aforesaid failure to provide documents and/or refusal

---

to provide an accounting of their profiteering from,
involvement, business dealings with and/or knowledge of I.
G. FARBEN's control of assets of I.G. CHEMIE, or defendants
retention of I. G. FARBEN or I.G. CHEMIE assets, plaintiffs
have been further damaged.

55.     Accordingly, plaintiffs demand that defendants UBS
make a full disclosure of all of their corporate records
that reveal defendants' involvement and/or business
dealings and/or involvement with and/or retention of I.G.
FARBEN and/or I.G. CHEMIE assets.

56.     WHEREFORE, Plaintiffs have suffered damages and are
entitled to judgment, jointly severally and/or in the
alternative, against Defendants on this cause of action
for, among other things (i) for an IMMEDIATE ACCOUNTING and
PRODUCTION of all documents related to the defendants'
profiteering, involvement and/or business dealings with
and/or retention of I.G. FARBEN and I.G. CHEMIE assets; and
(ii) attorneys fees, and the costs of this action.

### SECOND CAUSE OF ACTION — IMPOSITION OF CONSTRUCTIVE TRUST

57.     At all times relevant hereto, Plaintiffs repeat and
reallege each and every allegation as set forth above as if
the same were set forth fully and at length herein.

58.     At all times relevant hereto, defendants knew or
should have known of the existence of corporate records

that indicate their profiteering from, business dealings and/or involvement and/or retention of I.G. FARBEN and I.G. CHEMIE assets, which assets should have been returned to I.G FARBEN and plaintiffs so that I.G. FARBEN's debts, including reparations and restitution for and/or damages to victims of I.G. FARBEN related slave/forced labor, concentration and/or extermination camp operations and atrocities, could be paid.

59.    At all times relevant hereto, demands have been made periodically by plaintiffs and others that defendants UBS return to I. G. FARBEN the present values of I.G. CHEMIE/INTERHANDEL assets so that I.G. FARBEN's debts, including reparations and restitution for and/or damages to victims of I.G. FARBEN related slave/forced labor, concentration and/or extermination camp operations and atrocities, could be paid.

60.    At all times relevant hereto, Defendants UBS have refused to comply with the requests of plaintiffs and others, have refused to produce, withheld, concealed and/or destroyed the aforesaid relevant documents and have refused to returned to I.G FARBEN and plaintiffs the present value of the I.G. CHEMIE/INTERHANDEL assets that came into defendant UBS' possession, so that I.G. FARBEN's debts, including reparations and restitution for and/or damages to

victims of I.G. FARBEN related slave/forced labor,
concentration and/or extermination camp operations and
atrocities, could be paid.

61.    At all times relevant hereto, as a direct and
proximate result of defendants' (i) refusal to produce,
concealment, withholding and/or destruction of documents,
(ii) failure provide a proper accounting, and (iii) refusal
to return the present value of the I.G. CHEMIE/INTERHANDEL
assets that came into its possession, plaintiffs and others
have been caused to suffer immediate and substantial harm.

62.    At all times relevant hereto, Defendants UBS'
aforesaid actions, plaintiffs have been unable to secure
the return of I.G. FARBEN's assets with which to pay its
debts, including reparations and restitution for and/or
damages to victims of I.G. FARBEN related slave/forced
labor, concentration and/or extermination camp operations
and atrocities, and as a result, plaintiffs have been
unable to pay to victims the reparations and damages to
which they are entitled and for which they continue to be
forced to endure hardships through delayed payment.

63.    At all times relevant hereto, as a direct and
proximate result of their aforesaid improper actions,
defendants UBS have been unjustly enriched and placed in a
position whereby they had or have access to BILLIONS of

---------------
*Andreas Arndt: Magus GmbH und Trustees of I.G. Farben Aktiondrsvereinigung e.V. v. UBS et al (EDNY) -- Page 24*

DOLLARS in monies, benefits and/or funds that belong, both legally and/or equitably, to I.G. FARBEN, plaintiffs and which need to be used in part to pay reparations and restitution for and/or damages to victims of I.G. FARBEN related slave/forced labor, concentration and/or extermination camp operations and atrocities (hereinafter "FARBEN Victims") , could be paid.

64.     At all times relevant hereto, plaintiffs have a reasonable basis to believe, and based on the prior acts and practices of defendants UBS have justifiable cause to conclude that, if a constructive trust is not placed on a portion of defendants assets equal to – at a minimum of $1.8 billion dollars (USD) – the present value of the $122 million dollars which defendants UBS' predecessor in interest received in 1966, plaintiffs, I.G. FARBEN AG and FARBEN Victims, may NEVER receive the full benefits of the assets that can be traced to I.G. FARBEN and defendants UBS may shift or encumber assets so that they are not within the reach of plaintiffs and the persons who are entitled to receive the restitution, reparations and damages monies claimed herein.

65.     **WHEREFORE, Plaintiffs have suffered damages and are entitled to judgment, jointly severally and/or in the alternative, against Defendants on this cause of action**

--------------------

for, among other things (i) **IMMEDIATE IMPOSITION OF A CONSTRUCTIVE TRUST** in an amount equal to $1.8 billion dollars (USD) and (ii) exemplary or punitive damages, attorneys fees, and the costs of this action.

### THIRD CAUSE OF ACTION - FRAUD

66.    At all times relevant hereto, Plaintiff and the plaintiff class repeat and reallege each and every allegation as set forth above as if the same were set forth fully and at length herein.

67.    At all times relevant hereto, from 1945 to the present, defendants UBS, its predecessors in interest, their officers, directors, managers, personnel, agents and/or authorized representatives planned to defraud plaintiffs and FARBEN Victims out of the I.G. FARBEN assets which should have been returned to them.

68.    At all times relevant hereto, each of the acts of defendants UBS, its predecessors in interest, their officers, directors, managers, personnel, agents and/or authorized representatives was planned to wrongfully defraud Plaintiffs and FARBEN Victims out of the I.G. FARBEN assets that came into its/their possession.

69.    At all times relevant hereto, each of the acts described above was designed to make Plaintiffs and FARBEN Victims believe that the monies which came into defendants

UBS' possession or the possession of its predecessors in interest had nothing to do with and did not belong to I. G. FARBEN.

70.     At all times relevant hereto, defendant UBS', its predecessors in interests, their officers, directors, managers, personnel, agents and/or authorized representatives intentionally and/or negligently made statements to Plaintiffs and FARBEN Victims and publicly so as to make them believe, albeit wrongfully, that that the monies which came into defendants UBS' possession or the possession of its predecessors in interest had nothing to do with and did not belong to I. G. FARBEN.

71.     At all times relevant hereto, as a direct and proximate result of defendants' fraud, plaintiffs and FARBEN Victims lost BILLIONS of dollars.

72.     As a direct and proximate result of Defendants UBS' aforesaid fraud, plaintiffs and FARBEN Victims suffered injuries to their business, personal property and other interests.

73.     At all times relevant hereto, the injuries suffered by plaintiffs and FARBEN Victims were reasonably foreseeable or anticipated by defendants UBS as the natural consequence of their fraud.

74.     WHEREFORE, Plaintiffs have suffered damages and are
entitled to judgment, jointly severally and/or in the
alternative, against Defendants on this cause of action
for, among other things:

   a. $ 1.8 BILLION DOLLARS (USD) - which equals the present
      day value of the $122 million dollars (USD) that
      Defendants UBS' predecessors in interest received from
      the sale of assets in 1966; or

   b. $ 35 BILLION DOLLARS (USD) - which equals 40 - 45 % of
      the present market value of the outstanding shares of
      Defendant UBS' stock and which 40 - 45 % figure was
      the figure used to determine the $122 million dollars
      give to defendants UBS' predecessors in interest in
      1966;

   c. exemplary or punitive damages in an amount to be
      determined by a jury;

   d. attorneys fees; and

   e. costs of this action.

### FOURTH CAUSE OF ACTION - MISREPRESENTATION

75.     At all times relevant hereto, Plaintiffs repeat and
reallege each and every allegation as set forth above as if
the same were set forth fully and at length herein.

76.     At all times relevant hereto, from 1945 to the
present, defendants UBS, its predecessors in interest,

their officers, directors, managers, personnel, agents
and/or authorized representatives made knowingly false
statements, both orally and in writing, to Plaintiffs and
FARBEN Victims.

77.     At all times relevant hereto, Defendants UBS, its
predecessors in interest, their officers, directors,
managers, personnel, agents and/or authorized
representatives made the knowingly false statements, both
orally and in writing, as part of the plan to wrongfully
defraud Plaintiff and FARBEN Victims out of the billions of
dollars that came into defendants possession but which
should have been returned to I.G. FARBEN so that it could
pay its debts, including debts to FARBEN Victims.

78.     At all times relevant hereto, each of the statements,
both orally and in writing, made by defendants UBS, its
predecessors in interest, as described above was designed
to make Plaintiffs and FARBEN Victims believe or continue
to believe that the monies which came into defendants UBS'
possession or the possession of its predecessors in
interest had nothing to do with and did not belong to I. G.
FARBEN.

79.     At all times relevant hereto, Defendants UBS, its
predecessors in interest, their officers, directors,
managers, personnel, agents and/or authorized

representatives intentionally and/or negligently made the statements, both orally and in writing, to Plaintiff and FARBEN Victims so as to make them believe, albeit wrongfully, that the monies which came into defendants UBS' possession or the possession of its predecessors in interest had nothing to do with and did not belong to I. G. FARBEN.

80.    At all times relevant hereto, the statements, both oral and in writing, of defendants UBS, its predecessors in interest, were false and defendants knew they were false when they were made.

81.    At all times relevant hereto, defendants UBS, its predecessors in interest, did nothing to correct the impressions, conclusions and assumptions that were reached by Plaintiffs and FARBEN Victims, as a result of and based upon the aforesaid false and/or misleading statements, both orally and in writing.

82.    At all times relevant hereto, as a direct and proximate result of defendants' misrepresentations, Plaintiffs and FARBEN Victims have lost billions of dollars.

83.    As a direct and proximate result of defendants' aforesaid misrepresentations, Plaintiffs and FARBEN Victims

have suffered injuries to their business, personal property and other interests.

84.     At all times relevant hereto, the injuries suffered by Plaintiffs and FARBEN Victims were reasonably foreseeable or anticipated by defendants as the natural consequence of their misrepresentations.

85.     **WHEREFORE, Plaintiffs have suffered damages and are entitled to judgment, jointly severally and/or in the alternative, against Defendants on this cause of action for, among other things:**

    a. $ 1.8 BILLION DOLLARS (USD) - which equals the present day value of the $122 million dollars (USD) that Defendants UBS' predecessors in interest received from the sale of assets in 1966; or

    b. $ 35 BILLION DOLLARS (USD) - which equals 40 - 45 % of the present market value of the outstanding shares of Defendant UBS' stock and which 40 - 45 % figure was the figure used to determine the $122 million dollars give to defendants UBS' predecessors in interest in 1966;

    c. exemplary or punitive damages in an amount to be determined by a jury;

    d. attorneys fees; and

    e. costs of this action.

------------------

## FIFTH CAUSE OF ACTION – SPOLIATION OF EVIDENCE

86.     At all times relevant hereto, Plaintiffs repeat and
   reallege each and every allegation as set forth above as if
   the same were set forth fully and at length herein.

87.     At all times relevant hereto, from 1945 to the
   present, defendants UBS and its predecessors in interest
   engaged in reckless, careless, negligent and/or intentional
   conduct designed to conceal, withhold, alter and/or destroy
   evidence of defendants and/or its predecessors in interests
   profiteering from, business dealings and/or involvement
   and/or retention of I.G. FARBEN and I.G. CHEMIE assets,
   which assets should have been returned to I.G FARBEN.

88.     At all times relevant hereto, the aforesaid acts of
   defendants UBS and its predecessors in interest to conceal,
   withhold, alter and/or destroy evidence of defendants
   and/or its predecessors in interests profiteering from,
   business dealings and/or involvement and/or retention of
   I.G. FARBEN and I.G. CHEMIE assets, which assets should
   have been returned to I.G FARBEN were designed to allow
   defendant UBS and its predecessors in interest retain
   monies and/or assets that did NOT belong to them and which
   in fact should have been returned to plaintiffs, I.G.

----------------

FARBEN and with which they could have paid the company
debts, including the debt to FARBEN Victims.

89.    At all times relevant hereto, as recently as January
1997, a security guard named Christoph Meili working at
defendant UBS' headquarters in Zurich discovered defendant
UBS destroying Holocaust Era documents and later reported
that among the documents that defendants UBS sought to
destroy related to I.G. FARBEN companies and/or assets of
one or more of the "daughter" companies of I.G. FARBEN,
including BASF.

90.    At all times relevant hereto, Defendants UBS, its
predecessors in interest, their officers, directors,
managers, personnel, agents and/or authorized
representatives intentionally engaged in the aforesaid acts
to destroy evidence so as to make plaintiff and FARBEN
Victims and others believe, albeit wrongfully, that the
monies which came into defendants UBS' possession or the
possession of its predecessors in interest had nothing to
do with and did not belong to I. G. FARBEN.

91.    At all times relevant hereto, the aforesaid actions of
defendants UBS, its predecessors in interest, were wrongful
and unlawful.

92.    At all times relevant hereto, as a direct and
proximate result of defendants' aforesaid acts of

spoliation of evidence, Plaintiffs and FARBEN Victims have lost the ability to have access to documents that could have helped them prove or led them to other evidence that could have helped with the claims herein.

93.     As a direct and proximate result of defendants' aforesaid misrepresentations, Plaintiffs and FARBEN Victims have suffered injuries to their business, personal property and other interests.

94.     At all times relevant hereto, the injuries suffered by Plaintiffs and FARBEN Victims were reasonably foreseeable or anticipated by defendants as the natural consequence of their aforesaid wrongful and unlawful acts.

95.     **WHEREFORE, Plaintiffs have suffered damages and are entitled to judgment, jointly severally and/or in the alternative, against Defendants on this cause of action for, among other things:**

    a. **\$ 1.8 BILLION DOLLARS (USD) - which equals the present day value of the \$122 million dollars (USD) that Defendants UBS' predecessors in interest received from the sale of assets in 1966; or**

    b. **\$ 35 BILLION DOLLARS (USD) - which equals 40 - 45 % of the present market value of the outstanding shares of Defendant UBS' stock and which 40 - 45 % figure was the figure used to determine the \$122 million dollars**

give to defendants UBS' predecessors in interest in
1966;

c. exemplary or punitive damages in an amount to be
determined by a jury;

d. attorneys fees; and

e. costs of this action.

### PRAYER FOR RELIEF

**WHEREFORE** Plaintiffs demand a jury trial, judgment, and
damages against defendants, jointly, severally and/or in the
alternative, as follows:

(1)  For an accounting;

(2)  For the imposition of a constructive trust
in the amount of $ 1.8 BILLION DOLLARS
(USD);

(3)  For compensatory damages in the amount of $
1.8 billion which equals the present day
value of the $122 million dollars (USD)
that Defendants UBS' predecessors in
interest received from the sale of assets
in 1966;

(4)  For compensatory damages in the amount $ 35
BILLION DOLLARS (USD) – which equals 40 –
45 % of the present market value of the
outstanding shares of Defendant UBS' stock

and which 40 - 45 % figure was the figure

used to determine the $122 million dollars

give to defendants UBS' predecessors in

interest in 1966;

(5) For disgorgement of unjust enrichment based

on the assets wrongfully retained;

(6) For exemplary or punitive damages in an

amount to be determined at trial;

(7) For attorneys' fees and costs; and

(8) For such further relief as this Court may

deem just and equitable.

Dated:       February 4, 2004

Edward D. Fagan Esq.
Law Offices
51 JFK Parkway
1st Floor West
Short Hills, NJ  07078
Tel # (973) 422-1280
Email efaganatty@aol.com
 - and -
*New NY Address:*
11 Penn Plaza, 5th Floor
New York, NY 10048
Attorneys for Plaintiffs
**PLEASE RESPOND TO NJ**

*Of Counsel:*
Dr. Manfred D. Kahl LLM Esq.
Rechtsanwalt - Attorney at Law (New York)
Weseler Str. 561
D-48163 Munster
Tel. +49.251.7138-0
Fax. +49.251.71328-29
www@kahl-associates.de
www.kahl-associates.de

--------------------